**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Don Borg, | NO. C 07-03149 JW |
| Plaintiff, | **ORDER GRANTING DEFENDANTS'** |
| v. | **MOTION FOR SUMMARY JUDGMENT;** |
| Principal Life Insurance Co., et al., | **DENYING DEFENDANTS' MOTION FOR SANCTIONS** |
| Defendants. | |

## I. INTRODUCTION

Don Borg ("Plaintiff") brings this action against Principal Insurance Co. and Target Corp. (collectively, "Defendants") alleging, *inter alia*, violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Plaintiff alleges that Defendants fraudulently induced him into signing a settlement agreement.

Presently before the Court are (1) Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (hereafter, "Motion," Docket Item No. 38), and (2) Defendants' Motion for Rule 11 Sanctions[1] (hereafter, "Sanctions," Docket Item No. 42). The Court conducted a hearing on June 9, 2008. Based on the papers submitted to date and oral arguments of counsel, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Defendants' Motion for Sanctions.

---

[1] Since Defendants noticed this motion for a hearing on October 6, 2008, Plaintiff's obligation to respond is not yet due. See Civ. L.R. 7-3(a). However, the Court finds that it can address Defendants' motion for sanctions without the need for further briefing, and thus considers it in this Order.

## II. BACKGROUND

The present action is related to a previous action (hereafter, "Borg I") involving the same parties filed on December 21, 2005.[2] In Borg I, Plaintiff asserted three causes of action: (1) violation of ERISA; (2) breach of contract; and (3) bad faith denial of insurance benefits. (Id.) After discovery and mediation, the parties reached a settlement.[3] The Court entered a Stipulated Dismissal that dismissed all of Plaintiff's claims with prejudice.[4]

In a Complaint filed on June 14, 2007 (hereafter, "Borg II"), Plaintiff alleged, *inter alia*, that he was fraudulently induced by Defendants to enter into the settlement agreement reached in the 2005 action. (Complaint for Damages (ERISA) ¶ 8, Docket Item No. 1.) On February 29, 2008, the Court dismissed the Complaint after finding that the "plain language of the Settlement Agreement" in Borg I "clearly and specifically releases all of Plaintiff's claims against Defendants that existed as of the date of the Settlement Agreement." (Order Granting Defendants' Motion to Dismiss at 4, hereafter, "February 29, 2008 Order," Docket Item No. 31.) The Court found that Plaintiff's fraud allegations were inadequate because he did not "provide the specific content of the false representations" or the "identities of the parties to the misrepresentation." (Id. at 6.) The Court granted Plaintiff leave to amend.

In a First Amended Complaint filed on March 28, 2008, Plaintiff alleges as follows:

> Plaintiff was hired by Defendant in July 2001. (First Amended Complaint ¶ 13, hereafter, "FAC," Docket Item No. 35.) Around that time, Plaintiff also entered into a written contract for long term disability benefits. (Id.) Plaintiff first became disabled on or about February 6, 2003. (Id. ¶ 7.) Defendants refused to pay Plaintiff any long term

---

[2] Borg v. Principal Life Insurance Co., et al., No. 05-05295 (N.D. Cal. Dec. 21, 2005).

[3] (Declaration of Geoffrey Graber in Support of Motion to Dismiss, hereafter, "Graber Decl.," Ex. H, hereafter, "Settlement Agreement," Docket Item No. 10.)

[4] (Graber Decl., Ex. I, hereafter, "Stipulation.")

2

1  disability benefits. (Id. ¶ 18.) Defendants acted in bad faith in denying these disability
2  benefits. (Id. ¶ 24.)

3  On or about December 20, 2006, Defendants fraudulently induced Plaintiff to sign a
4  settlement agreement as to his original ERISA complaint. Due to actions of the Defendant,
5  Plaintiff became even more disabled. (FAC ¶ 9.) Plaintiff also made a material mistake in
6  misunderstanding the terms of the Settlement Agreement because he was suffering from a
7  "certain medical condition and was under the influence of medicines prescribed by his
8  doctors." He believed the Settlement Agreement only covered his existing claims and that he
9  would be able to assert his subsequent disability claims. (Id.) Further, Defendant Principle
10 Life applied a general fraudulent "rote" denial of LTD claims not only with regard to
11 Plaintiff's claims but also to claims by "millions and thousands of other policyholders
12 through the world." (Id.) Plaintiff is informed and believes that many other people filed suit
13 against Principal Life for such fraudulent claims practices. (Id.) As a result of Defendants'
14 conduct, Plaintiff has been injured. (Id. ¶ 10.)

15 On the basis of the allegations outlined above, Plaintiff alleges three causes of action: (1)
16 fraudulent inducement, (2) breach of contract, and (3) bad faith denial of benefits.

17 Presently before the Court are (1) Defendants' Motion to Dismiss or, in the Alternative, for
18 Summary Judgment and (2) Defendants' Motion for Rule 11 Sanctions. The Court will first
19 consider, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. Although
20 Defendants' motion is captioned as a motion to dismiss, or, alternatively, for summary judgment, the
21 Court finds it necessary to review pleadings and declarations other than the contents of the First
22 Amended Complaint. Therefore, the Court considers the motion as a motion for summary judgment
23 rather than as a motion to dismiss and, accordingly, applies the standards set forth below.

### III. STANDARDS

25 Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and
26 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any
27 material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.
28

3

56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

**A.    Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on the grounds that Plaintiff cannot prove he was fraudulently induced into signing the Settlement Agreement, and (2) Plaintiff's claims were released under the Settlement Agreement. (Motion at 7, 11.) The Court considers each issue in turn.

    **1.    Fraudulent Inducement**

At issue is whether Plaintiff can prove that he was fraudulently induced into signing the Settlement Agreement.

4

A settlement agreement may be unenforceable if it is procured by fraud, or if consent was given on the basis of a significant and material mistake. See Merced County Mut. Fire Ins. Co. v. The State of California, 233 Cal. App. 3d 765, 771 (1991). To prove fraud in the inducement of a contract, a party must establish the elements of common law fraud. Id. The elements of fraud are (1) misrepresentation; (2) scienter; (3) justifiable reliance; and (4) resulting damage. Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798, 806-07 (2007); Wilke v. Coinway, Inc., 257 Cal. App. 2d 126, 136 (1967) (quoting Cortez v. Weymouth, 235 Cal. App. 2d 140 (1965)). One court explains the requirement as follows:

> A fraudulent misrepresentation is one made with the knowledge that it is or may be untrue, and with the intention that the person to whom it is made act in reliance thereon. . . . It must appear, however, not only that the plaintiff acted in reliance on the misrepresentation but that he was justified in his reliance. . . . He may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts . . ., unless the person expressing the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust. . . . If, however, the opinion or legal conclusion misrepresents the facts upon which it is based or implies the existence of facts which are nonexistent, it constitutes an actionable misrepresentation.

Wilke, 257 Cal. App. 2d at 136 (quoting Cortez v. Weymouth, 235 Cal. App. 2d 140, 151 (1965)).

Where a party is represented by counsel, or where the alleged misrepresentation was made by an adversary during the course of negotiations, courts have held that reliance is unjustifiable. See Scognamill v. Credit Suisse First Boston LLC, 2005 WL 2045807 (N.D. Cal. 2005); Wilhelm v. Pray, Price, Williams & Russell, 186 Cal. App. 3d 1324 (1986).

First, it is worth noting that while Plaintiff alleges that on December 20, 2006, he was fraudulently induced to sign the Settlement Agreement by Geoffrey Graber, counsel for Defendants, he does not allege what statement was made by Mr. Graber or why that statement was false.[5]

---

[5] With respect to his fraud claim, Plaintiff alleges as follows:
The plaintiff signed the SA ["Settlement Agreement"] on 12-20-06 due to a material mistake in the circumstances and was fraudulently induced by Jeff [sic] Graber, counsel for defendants Target and Principal Life, who made material misrepresentation at 450 Golden Gate Ave., San Francisco and also at the Morrison Forester offices at 425 [M]arket Street in San Francisco on or about December 20, 2006, and also continuously from on our [sic] about Sep. 1 2006 through Dec. 20, 2006. (FAC ¶ 9.)
In addition, several Principal Life officials and Target officials in the benefits claims departments made material misrepresentations to plaintiff in that many of these people told the plaintiff, inter alia, that the settlement agreement [] he was signing on Dec 20 2006 would

5

Plaintiff further alleges that several Principal Life or Target officials in the benefits life department made material misrepresentations. However, Plaintiff does not identify who these individuals were. As in the original Complaint, Plaintiff fails to differentiate between the Defendants and fails to identify the allegedly false statements.

Second, Plaintiff stated in the Settlement Agreement that he was "represented in negotiations for, and the preparation of, this Agreement by counsel of [his] choosing;" that he had "read this Agreement" or "had it read to [him] and explained by counsel;" that he "understands and is fully aware of its contents and of its legal effect;" and that he "is voluntarily entering into this Agreement upon the legal advice of [his] counsel." (Settlement Agreement ¶ 5.) Plaintiff also represented and acknowledged that in executing the Settlement Agreement, he had

> not relied upon any representations or statements made by the other party or their agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise beyond the representations and statements expressly contained herein.

(Settlement Agreement ¶ 6.) Since Plaintiff was represented by counsel at the time of the allegedly fraudulent statement, the same counsel representing him in this action, it is not reasonable for Plaintiff to accept Defendants' statements, if any, without an independent inquiry or investigation.

Plaintiff alleges that he was unable to understand the terms of the Settlement Agreement because of a medical condition and because he was under the influence of prescription drugs. (FAC

---

only cover [sic] (Id.)

The material mistake/misrepresentation ("MMP") concerned the circumstances and rules of Principal Life and Target, pursuant to which plaintiff would be entitled to assert additional disability claims for disabilities that occurred or became exacerbated after his original claim and after that claims [sic] was filed. Specifically, plaintiff believed, and relied on this material mistake/misrepresentation [] that he was settling the ERISA claim Against [sic] Target and Principal Life ("T-PL") only as to that particular claim (the first disability claim) which had been originally considered by T-PL as part of his original claim, and which was in the "appeal file" for which he had 180 days to appeal. Thus this MMP led plaintiff to believe, at the time he signed the SA on 12-20-06, that he still had open his subsequent disability claims and that he could file ERISA lawsuits based upon these additional and subsequent claims because and while he was still employed by Target and covered by Principal Life for LTD when the subsequent injuries/disabilities occurred. (Id.)

Defendants Target and Principal Life made material misrepresentations both verbally and in writing, on or about Dec. 20, 2008 [sic], by the persons and at the addresses above indicated, regarding the criteria and parameters for plaintiff to submit a valid disability claim. (Id.)

6

¶ 9.) In California, individuals are presumed to "have the capacity to make decisions and to be responsible for their acts or decisions." Cal. Prob. Code § 810(a). Plaintiff's vague and generic allegation is insufficient to overcome this presumption; this is particularly true since Plaintiff was represented by counsel throughout the negotiations.

In light of Plaintiff's repeated failure to allege the particulars of Defendants' alleged false statements and facts which could overcome the presumption of justifiable reliance, the Court finds that Plaintiff has not and cannot state a claim for fraudulent inducement.

**2.     The Release of All Claims Under the Settlement Agreement**

At issue is whether the Settlement Agreement provides for a broad release of all claims.

The Settlement Agreement provides:

> [Plaintiff] does hereby completely and irrevocably release and forever discharge Defendants . . . from any and all claims and rights (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature and character, known and unknown) that [Plaintiff] asserted or could have asserted in the Litigation, and any and all other claims and rights arising out of or relating to the subject matter of the Litigation (including, without limitation, rights of set-off and recoupment, demands, actions, obligations, and causes of action of any and every kind, nature and character, known and unknown) that [Plaintiff] may have or could have filed or caused to be filed in any court of law or before any administrative agency, state or federal, prior to the execution of this Agreement.

(Settlement Agreement ¶ 3.) Plaintiff further acknowledged that he:

> may have sustained damages, losses, costs, or expenses which are presently unknown or unsuspected and that such damages, losses, costs, or expenses as may have been sustained may give rise to additional damages, losses, costs, or expenses in the future. [Plaintiff] acknowledges that he has negotiated this Agreement taking into account such presently unsuspected and unknown damages, losses, costs, and expenses and that he hereby expressly waives any and all rights that he may have under Section 1542 of the California Civil Code or under any other state or federal statute or common law principle of similar effect.

(Settlement Agreement ¶ 4.) By its plain terms, the Settlement Agreement provides for the release of all claims. Regardless of what representations may have been made during the course of the parties' negotiations, there is no doubt that the language of the release in Paragraphs 3 and 4 of the Settlement Agreement conveys the intent of the parties to release all claims.

Plaintiff contends that future claims were not discussed during negotiations or addressed by the Settlement Agreement. However, the evidence shows that after the parties reached a settlement in principle, counsel for Defendants, Geoffrey Graber, emailed counsel for Plaintiff, Stanley Hilton

7

1  to confirm the scope of the agreement. (Graber Decl., Ex. G.) The email acknowledged Plaintiff's

2  desire to exclude future claims from the Settlement Agreement. (Id.) However, Mr. Graber

3  unequivocally rejected that option and stated, "Defendants will not engage in any further

4  negotiations regarding the terms of the settlement to which Plaintiff has already agreed." (Id.) Mr.

5  Hilton replied, as follows:

> IT IS NOT TRUE THAT BORGH [sic] WONT [sic] SIGN. HE JUST WANTED CLARIFICATION ON HIS 4 OTHER CLAIMS FROM SEP 06. ARE THEY OUT TOO WITH THIS OR ION? [sic] IS YOUR CLENTS [sic] WILLING TO EXCLUDE THESE FROM THE AGREEMENT? THIS IS JUST A QUESTION, NOT AN ATEMOPT [sic] TO GET OUT OF THE K.
>
> IF YOU WILL INDICATE, NOW I KNOW, I WILL SPEAK TO HIM AND I BELIEVE HGE [sic] WILL SIGN IT. JUST GIVE US A FEW DAYS PLEASE, TILL NEXT FRIDAY?

11 (Id.) Mr. Graber reiterated to Mr. Hilton that the additional claims would not be carved out of the

12 Settlement Agreement and no additional compensation would be paid for these claims. (Graber

13 Decl. ¶ 14.) Thus, Plaintiff's counsel was expressly aware of the scope of the Settlement Agreement

14 and represented that the inclusion or exclusion of the other claims would not affect Plaintiff's

15 willingness to sign the Settlement Agreement.

16        At the hearing, the Court inquired as to whether Plaintiff could assert any claims based on

17 acts or omissions by Defendants after the Settlement Agreement had been signed. Plaintiff referred

18 to his motion papers in which he addressed injuries relating to the four benefit claims he had filed

19 prior to the lawsuit. However, the Court finds that these claims were released because they existed

20 at the time the Settlement Agreement was signed.

21        The Court finds that Plaintiff has failed to tender sufficient evidence of fraud in the

22 circumstances proffered to the Court to create a genuine dispute as to whether the Settlement

23 Agreement was fraudulently induced. Accordingly, the Court GRANTS Defendants' Motion for

24 Summary Judgment.

25 **B.    Defendants' Motion for Rule 11 Sanctions**

26        Defendants move for sanctions on the grounds that Plaintiff and his attorney (1) violated

27 Rule 11 by filing a legally frivolous Amended Complaint, and (2) violated Rule 11 by knowingly

28 making false factual assertions in the Amended Complaint. (Sanctions at 4, 7.)

8

Under Rule 11(a) of the Federal Rules of Civil Procedure, every signature on a pleading, motion or other paper constitutes certification of the merits of the document. Sanctions are mandatory when the paper is: (1) not "well grounded in fact"; (2) not "warranted by existing law"; or (3) filed for an "improper purpose." Fed. R. Civ. P. 11(b); see also Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1508 (9th Cir. 1987); Estate of Blue v. County of Los Angeles, 120 F.3d 982, 985 (9th Cir. 1997). "Frivolous filings are 'those that are both baseless and made without a reasonable and competent inquiry.'" Id. The rule creates and imposes on a party or counsel an affirmative duty to investigate the law and facts before filing, and further obliges an attorney to dissuade a client from pursuing specious claims, thereby avoiding possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim. Id.; Mohammed v. Union Carbide Corp., 606 F. Supp. 252 (E.D. Mich. 1985).

The Court finds that Plaintiff's First Amended Complaint was not presented for "improper purposes," such as harassment or causing unnecessary delay or needless increase in the cost of litigation. When the Court dismissed Plaintiff's original Complaint, the Court gave Plaintiff leave to amend. Plaintiff amended his Complaint at the Court's invitation. There is no evidence that Plaintiff's First Amended Complaint was for the purpose of harassment or causing unnecessary delay. Since Rule 11 authorizes the imposition of both monetary and nonmonetary sanctions, including the striking of individual claims or defenses that are deemed frivolous, the Court finds that the granting of Defendants' motion for summary judgment is a sufficient form of sanctions. See Fed. R. Civ. P. 11(c)(4). Accordingly, the Court DENIES Defendants' Motion for Rule 11 Sanctions.

## V. CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment. The Court DENIES Defendants' Motion for Sanctions.

Dated: July 24, 2008

JAMES WARE
United States District Judge

9

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Angela Lucia Padilla, apadilla@mofo.com
Stanley G. Hilton FROG727@AOL.COM

**Dated: July 24, 2008**                                              **Richard W. Wieking, Clerk**

                                                        **By:   /s/ JW Chambers**
                                                        **Elizabeth Garcia**
                                                        **Courtroom Deputy**